**David M. WEHNER, Appellant,**

v.

**Edward H. LEVI, Attorney General, et al.**

No. 75–1393.

United States Court of Appeals, District of Columbia Circuit.

Argued March 30, 1976.

Decided Aug. 10, 1977.

---

E. Edward Bruce, Washington, D. C., with whom Craig D. Miller and Ralph J. Temple, Washington, D. C., were on the brief, for appellant.

Mary-Elizabeth Medaglia, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Peter R. Reilly, Asst. U. S. Attys., Washington, D. C., at the time the brief was filed, were on the brief, for appellees.

Before BAZELON, Chief Judge, and LEVENTHAL and ROBB, Circuit Judges.

Opinion for the Court filed by Circuit Judge LEVENTHAL.

LEVENTHAL, Circuit Judge:

Plaintiff, a file review clerk with the Federal Bureau of Investigation, was fired for consuming alcoholic beverages while on duty and for leaving the building to which he was assigned without permission. Alleging his dismissal was a denial of due process, plaintiff sought declaratory and injunctive relief in the district court. The district judge granted summary judgment for the defendants.[1] In view of plaintiff's contention that he was denied procedural constitutional rights, and the context of a dismissal for conduct that in other government agencies would likely have resulted in less severe sanction, we have deferred our ruling pending the Supreme Court's decision in *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977). We now enter a judgment of affirmance.

The circumstances surrounding the dismissal are as follows: On the afternoon of

---

1. The defendants are the Attorney General, the Director of the FBI, and several other FBI officials.

March 8, 1974, plaintiff and a co-worker left their office, the FBI's Identification Building, to go to a nearby restaurant for a beer. Upon their return, after being confronted by their supervisor, they admitted leaving the building without permission and consuming alcoholic beverages during working hours. Both these activities were contrary to FBI regulations.[2]

The employees were informed that their actions had placed their employment in jeopardy, and were given the opportunity to prepare written explanations of their actions.[3] These were forwarded, along with a report prepared by their supervisor, to their superiors in the Files and Communications Division. Plaintiff also met with the Assistant Director of the Division to discuss the matter.

Following a review of the facts and plaintiff's explanation, both the Files and Communication Division and the Administrative Division recommended to the FBI Director that plaintiff's resignation be requested.[4] This recommendation was approved by the Director. Plaintiff was requested to resign, several times, but refused. He was then discharged.

Plaintiff now alleges his dismissal constituted a deprivation of both property and liberty without due process of law. We shall discuss these claims separately.

## I. PROPERTY INTEREST

█ FBI employees are excepted from the competitive civil service,[5] and thus have not been given the statutory protections normally accorded federal workers. However, plaintiff contends that representations made by FBI personnel both before and during his employment provided a sufficient expectation of continued employment to constitute "property" as that term is used in the Fifth Amendment. It is clear that a mutual understanding between employer and employee can create a property interest in continued employment even in the absence of a written contract or statutory protections. *Perry v. Sinderman,* 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). In the instant case, however, it is unnecessary for the court to determine whether such an interest did in fact exist since the procedures accorded plaintiff fully comported with the requirements of due process.

In recent years the Supreme Court has decided numerous cases dealing with the types of procedures appropriate to the protection of a property interest. Throughout all these cases runs the consistent thread that due process is a flexible concept, calling for "such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

In the instant case, appellant admitted violating the FBI regulations in question, and he concedes that he had at least constructive notice of these regulations.[6] Moreover, appellant has raised no defenses or mitigating circumstances—before either the agency or the courts—which are in any sense "complex or otherwise difficult to develop."[7] Accordingly, on the facts of this

---

**2.** Both plaintiff and his co-worker were given copies of these regulations when first employed by the FBI.

**3.** In relevant part, plaintiff's explanation to the FBI read:

> I hereby state that at approximately 3:00 p. m., I left the Identification Building and proceeded across the street to the Market Inn where I consumed one beer, returning at approximately 3:25 p. m. I acknowledge that this is strictly against Bureau standards and admit my guilt. In my meager defense I can only say that it was a "spring fever" type reaction with no intentional offense in mind.

Wehner Memorandum, March 8, 1974, J.A. 42.

**4.** A similar recommendation was made regarding the other employee, who eventually did resign.

**5.** 28 U.S.C. § 536.

**6.** *See* notes 2 & 3, *supra.*

**7.** We are not required on the facts of this case to consider whether a person in plaintiff's position may invoke all or even much of the due process standard laid down in *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), for parole revocation. *Gagnon* did not require the procedural protections there developed in the absence of a "timely and col-

case, we conclude that the opportunities provided to appellant to explain his conduct—both in writing and during the meeting with the Assistant Director of the Files and Communications Division—satisfy the requirements of due process.[8]

## II. LIBERTY INTEREST

Alleging the stigmatizing effect of his dismissal will make it difficult for him to obtain future employment,[9] plaintiff contends that the Supreme Court's decision in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), entitles him to a hearing. We disagree. The purpose of a *Roth* hearing is to provide the individual the opportunity to refute the charges and clear his name. 408 U.S. at 573, 92 S.Ct. at 2707. "[I]f the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute between an employer and a discharged employee which has some significant bearing on the employee's reputation." *Codd v. Velger,* 97 S.Ct. 882, 884 (1977). Plaintiff admitted violating FBI regulations.[10] There is no claim that he had any facts in the way of excuse or mitigation to provide beyond the statement in his written explanation. In short, there is no factual dispute in this case, and an oral hearing is not constitutionally mandated.

*Affirmed.*

orable claim" either that the person did not commit the alleged violation, or that in a case where the violation is uncontested, "there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present." *Id.* at 790, 93 S.Ct. at 1764. *See also Wolff v. McDonnell,* 418 U.S. 539, 559–60, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

8. Since plaintiff admitted violating the regulations it is unnecessary for the court to determine the requisite procedures in those cases involving a factual dispute regarding the employee's conduct. We note, however, that in the context of student disciplinary proceedings a denial of wrongdoing may require different procedures than those instances in which a student admits his guilt:

. . . due process requires . . . that the student be given oral or written notice of

the charges against him and, *if he denies them,* an explanation of the evidence authorities have and an opportunity to present his side of the story.
*Goss v. Lopez,* 419 U.S. 565, 581, 95 S.Ct. 729, 740, 42 L.Ed.2d 725, 739 (1975) (emphasis added).

9. *See* 5 C.F.R. § 302.101 which permits the Civil Service Commission to deny the right to take a federal service examination or to be appointed to the competitive service to an individual who has been dismissed for misconduct within the past three years.

10. See note 3, *supra.*