Michael McCLAIN, Joined by Next
Friend, Nellie McClain,
Plaintiffs-Appellants,

v.

LAFAYETTE COUNTY BOARD OF
EDUCATION, et al.,
Defendants-Appellees.

No. 81–4030.

United States Court of Appeals,
Fifth Circuit.

April 14, 1982.

---

Willie L. Rose, North Miss. Rural Legal Services, Catherine V. Kilgore, Lexington, Miss., for plaintiffs-appellants.

Edwin F. Perry, Oxford, Miss., for defendants-appellees.

Before COLEMAN, POLITZ and GARWOOD, Circuit Judges.

COLEMAN, Circuit Judge.

A switchblade knife is a large jackknife that snaps open when a release button on the handle is pressed. The carrying of such a knife, concealed in whole or part, is a misdemeanor under Mississippi law, punishable on the first conviction by fine or imprisonment in the county jail, or both, Mississippi Code, 1972, Section 97–37–1. By 1890 the carrying of concealed deadly weapons had attained such gravity that statutes prohibiting such conduct received special constitutional sanction, Mississippi Constitution 1890, Section 12.

The written rules of the Lafayette County High School specifically prohibited the carrying of knives to school. These rules were printed in the school *Handbook* and were also read to the students at assembly. The plaintiff-appellant in this case, Michael McClain, age fourteen, in the Eighth grade, admitted in open court that he knew the rule. His mother testified that she had read the *Handbook* and was aware of the rule.

On September 23, 1980, Michael carried a switchblade knife to school. The physical education teacher saw the knife in the student's possession and took him forthwith to the principal's office where, according to the findings of fact of the District Court, which the record supports without dispute, Michael admitted that he had the knife. He also admitted that he knew that it was against the rule. His explanation was that he had found the knife, forgot that he had it in his pocket, and unintentionally had brought it to school.

The principal sent Michael back to class and later the same day directed him to appear in his office the following morning with his mother.

On September 24, 1980, Michael and his mother met with Mr. Bigham in his office where they were informed that Michael would be indefinitely suspended for his possession of the knife.[1] At that time the principal gave Mrs. McClain a letter [2] in-

---

1. The District Judge found that the indefinite suspension lasted six days. This would amount to a temporary suspension under *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

2.

September 24, 1980

Mrs. Nellie McClain
Route 1, Box 301
Taylor, Miss. 38673
Dear Mrs. McClain:

This is to inform you of the disciplinary action taken against Michael McClain on September 24, 1980.

On September 24, 1980 Michael was indefinitely suspended. This suspension is the result of Michael having a switchblade knife in his possession and displaying it.

The Lafayette County School Board will meet Tuesday night, September 30, 1980, at 7:00 P.M. You have the right as a parent to attend and request re-admittance in the school for Michael if you so desire. You will need to contact Mr. Roy Young, County Superintendent of Education, telephone 234–3271 and set up an appointment to be placed on the agenda.

forming her that Michael was "indefinitely suspended" because of his possession and display of a switchblade knife and that she had a right to attend the Lafayette County School Board meeting which was to be held on September 30, 1980 to "request re-admittance" for Michael.

Mrs. McClain arranged an appointment in accordance with the third paragraph of the letter. She, along with Michael, attended the meeting of the Lafayette County School Board on the night of September 30, 1980. The principal and the physical education teacher attended the meeting and related their accounts of the switchblade knife event leading to Michael's suspension. Tape recordings of statements taken from other students during the course of the investigation which followed Michael's September 24 suspension were played.[3] Mrs. McClain and Michael were given the opportunity to question anyone present, and they were also afforded the opportunity to explain any facts or circumstances which might have a bearing on the Board's decision regarding Michael's reinstatement.

Lafayette County High School provides each of its students with a *Student Handbook* at the start of the school year. As already noted, the *Student Handbook* was read aloud to Michael and other members of his class on the first day of classes. In addition, Mrs. McClain testified that she had read the *Handbook.*

The *Student Handbook* provides in pertinent part:

DISCIPLINE ...

SUSPENSION

Student suspension during an academic year because of infractions of the rules and regulations of the school system may be (1) a 2-day suspension; or (2) a 4-day suspension; or (3) an indefinite suspension. The first infraction of those offenses which are deemed inappropriate shall be a 2-day suspension for which parents/guardian of students in question must return to the school with said student and have a conference with the principal before said student will be re-admitted. A second infraction by same student shall be a 4-day suspension for which parents/guardian must return with student for a conference with the principal before said student will be re-admitted. A third infraction by same student of those rules deemed inappropriate shall mean an indefinite suspension but may be for a first infraction of those more severe infractions of rules or regulations deemed appropriate. Any student who is suspended indefinitely shall be given written notice of a hearing before the school board at which time student and/or parents/guardian may secure counsel and witnesses in student's behalf to appear before the school board, and the school board, after considering evidence shall rule as to whether said student shall be re-admitted to school. No student who has been suspended indefinitely shall be re-admitted until a hearing has been had before the school board and said school board has rules in favor of readmitting said student ....

DANGEROUS OBJECTS, WEAPONS, ETC.

If we can be of further assistance to you, please let us know.

> Sincerely,
> /s/ William E. Bigham
> W. E. Bigham
> Principal

3. Mr. Bigham testified that he began to hear rumors that Michael had brought the knife to school to get in a fight with some of the other students. Therefore, in the presence of the assistant principal and Mr. Bynum, Mr. Bigham taped the testimony of several students who said they saw Michael with the knife. The tapes were not introduced into evidence before the District Court nor was discovery of the tapes sought. They are not in the record before us. The record does not reflect that the student, or anyone on his behalf, ever expressed any dissatisfaction at the school board hearing to the playing of the tapes, or requested any recess or other opportunity to present at a later time any rebuttal or explanation of the tapes.

It is the strict policy of the Lafayette County School Board that no student shall bring on the school grounds during school hours or during school functions or athletic events any weapons or objects, the design of which could inflict bodily harm, pain or injury to another student. (This includes, but is not limited to the following:)

1. Knives, including any object sharpened or cut to a point, of any kind or nature whatsoever, whether homemade or manufactured

. . . .

Any student found in possession of any such article, objects or devices, or who is found to have brought such articles, devices or objects on the school ground during school hours, school functions or athletic events shall be immediately brought before the principal for a hearing and explanation, the result of which may be indefinite suspension.

IMPORTANT NOTE: These rules shall be applied and enforced in the strictest sense; therefore, any student who has any doubt whatsoever about any object, device or article in their possession as to a possible violation should get an interpretation from the principal immediately and let said principal keep the particular object during school hours until it can be removed from the school property.

The School Board voted to change Michael's indefinite suspension to a suspension for the remainder of the school year. Mrs. McClain was notified later on the night of the meeting of the Board's actions.

This suit for injunctive relief soon followed and the District Court held an evidentiary hearing, filed findings of fact, and denied injunctive relief.

On appeal, the McClains contend that Michael's procedural due process rights were violated when he was suspended for an indefinite period of time from the high school without first being given a hearing. They argue that this indefinite suspension was in fact a long-range suspension, which should have been preceded by a fair, impartial and meaningful hearing on both the charges and the appropriate punishment. Furthermore, they contend even if the suspension by Mr. Bigham were viewed as a short-range suspension, Michael's procedural due process rights were violated during the School Board meeting because he was not given adequate notice of the type of hearing and the charges, the names of his accusers and a summary of their expected testimonies, the right to retain and to be represented by counsel, nor the right to confront and cross-examine the witnesses.

[T]he State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by the Clause. *Goss v. Lopez*, 419 U.S. 565, 574 [95 S.Ct. 729, 736, 42 L.Ed.2d 725] (1975).

Once it is determined that due process applies, the question remains what process is due. *Morrissey v. Brewer*, 408 U.S. 471, 481 [92 S.Ct. 2593, 2600, 33 L.Ed.2d 484] (1972).

At the very minimum . . . students facing suspension and the consequent interference with a protected property interest must be given *some* kind of notice and afforded *some* kind of hearing . . . .

[D]ue process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story. . . . . There need be no delay between the time "notice" is given and the time of the hearing. In the great majority of the cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred. We hold only that, in being given an opportunity to explain his ver-

sion of the facts at this discussion, the student first be told what he is accused of doing and what the basis of the accusation is. 419 U.S. at 579, 581, 582 [95 S.Ct. at 738, 739, 740.]

The Supreme Court has cautioned that "... suspensions or explusions for the remainder of the school term, or permanently, may require more formal procedures." *Id.* at 584, 95 S.Ct. at 741.

The District Court held that the standards of *Goss v. Lopez, supra,* were met. Michael admitted the possession of the knife when first taken to the principal. Indeed, he could hardly have done otherwise because the physical education teacher saw him in possession of it and took it from him. Never at any time or place, including the hearing in the District Court, did Michael deny it. He did say that he forgot about having this large jackknife, and a switchblade at that, in his pocket. This is not the kind of defense to carrying a deadly weapon that a jury or other factfinder must accept.

■ Relying upon *Dixon v. Alabama State Board of Education,* 294 F.2d 150, 159 (5th Cir., 1961), plaintiff argues that he should have been given the names of the witnesses against him and an oral or written report of their testimonies. Plaintiff contends that the taped testimony denied him a right of confrontation. Though the *Dixon* Court did find that the students in that case should have been given the list of witnesses against them, the Court noted, "The nature of the hearing should vary depending upon the circumstances of the particular case." *Id.* at 158.

We can conceive of situations in which the playing of the tapes as done here might be a denial of due process. Not in this instance, however. The issue was whether Michael had carried a switchblade knife to school. There is no representation that the tapes presented any untruths or dealt with any other issue. Therefore, they were merely cumulative on an issue in which Michael had conceded his guilt and has never afterward denied it.

During the hearing before the District Court these statements were made:

Q. It's against school rules to bring a knife to school, isn't it, Mike?

A. Yes, sir.

Q. You knew that, didn't you?

A. Yes, sir.

Q. You brought a knife to school, didn't you?

A. Yes, sir.

Q. What kind of knife was it, Michael?

A. Switchblade.

Transcript, pp. 14–15.

We are simply not faced with a situation in which one denies the wrongdoing. *Goss v. Lopez,* 419 U.S. at 581, 95 S.Ct. at 739; *Wehner v. Levi,* 562 F.2d 1276, 1279 n. 8 (D.C.Cir.1977).

The nub of the matter is that the student was given an opportunity to present his side of the case, including anything by way of denial or mitigation. He and his mother appeared and participated. There has never been any doubt of Michael's guilt in carrying this deadly weapon to school. There was nothing fundamentally unfair or legally prejudicial in the proceedings.

The judgment of the District Court denying injunctive relief is

AFFIRMED.