Chuck KEOUGH, et al.,
Plaintiffs-Appellants,

v.

TATE COUNTY BOARD OF EDUCA-
TION, et al., Defendants-Appellees.

No. 84-4138.

United States Court of Appeals,
Fifth Circuit.

Dec. 21, 1984.

---

North Ms. Rural Legal Service, Lawrence E. Young, Holly Springs, Miss., Leonard McClellan, Tupelo, Miss., for plaintiffs-appellants.

James R. Johnson, III, Senatobia, Miss., Smith & Phillips, Briggs Smith, Batesville, Miss., for defendants-appellees.

Before GEE, WILLIAMS and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Chuck Keough, a high school senior suspended from a Tate County, Mississippi high school, brought this suit under 42 U.S.C. § 1983, alleging that the school board and school officials, in suspending him on two occasions, violated his constitutional rights to hearings which meet procedural due process requirements. The district court denied Keough's request for a preliminary injunction and entered final judgment, finding that he had been afforded procedural due process. We affirm.

## I.

The plaintiff and now appellant, Chuck Keough, was a senior at Independence High School in Tate County, Mississippi in the fall of 1983. On December 9, 1983, near the end of the first semester of the 1983–84 school year, the defendant Robert L. Massey, the school principal, called Keough into his office to discuss a report that Keough had not sat in his assigned

seat in study hall. Keough, who had created similar difficulty the previous day, explained that someone else was sitting in his seat.

During the discussion, Keough became angry, cursed Massey, and left the office and the school grounds. A short time later he returned to Massey's office where Kenneth Thompson, the assistant principal, was present. When Keough refused to apologize for his conduct, he was given the choice of a ten-day suspension or a paddling. He chose suspension. When Massey told Keough he was suspended for ten days, Keough again became belligerent and challenged Massey to a fight. The challenge unaccepted, Keough left the school grounds and did not return.

Later that same day, Keough's parents, Charles and Jewell Keough, met with Donald M. Clanton, the Superintendent of Education for the Tate County Schools to discuss their son's suspension. When told of a hearing on January 3, 1984, the Keoughs insisted that the meeting be held on December 14, 1983 so that their son could take his scheduled final exams. Clanton agreed to move the hearing date.

That same afternoon, two letters on behalf of the school board were hand-delivered to the Keoughs. The first, written by Massey, advised them that their son had been suspended from school for ten days. The reasons given for the suspension were Keough's repeated misbehavior in school, his refusal to sit in his assigned seat in study hall, use of profane language, leaving campus without permission on two occasions, being rude and disobedient, and challenging Massey to a fight. The letter stated that Keough could return to school on January 5, 1984.

The second letter, written by Clanton, noticed a hearing before the school board on December 14, 1983. The letter included the same charges set forth in Massey's letter. It also advised them that they had the right to be represented by an attorney at the hearing. The letter concluded with the statement: "The status of your son as a student at Independence High School will be determined by the school board at this time." There was no further communication between the school officials and the Keoughs until the hearing before the school board.

At the beginning of the hearing, the board gave the Keoughs the statements of witnesses who were later called to testify. Five witnesses other than Massey, three of whom were Keough's teachers, testified against Keough. The other two were Kenneth Thompson, the assistant principal who was with Massey and Keough at the second meeting on December 9, and a bus driver at the school. The Keoughs were afforded the right to cross-examine these witnesses, to make statements and to testify. The Keoughs took advantage of these opportunities and made statements in their son's defense and asked questions of some of the witnesses. At the conclusion of the hearing, the board determined that Keough could take his first semester exams, but it expelled him for the remainder of the 1983–84 school year.

Keough, along with his parents, challenged the school board action on January 10, 1984, by filing suit in district court. They alleged substantive and procedural due process violations and simultaneously filed a motion for a temporary restraining order or a preliminary injunction to prevent the board from denying him access to the school. The motion was brought solely on the basis of the alleged procedural due process violation. After hearing testimony from the Keoughs and the board, the district court denied injunctive relief. The Keoughs moved for reconsideration or, in the alternative, a final judgment. The court denied reconsideration, but entered final judgment. The Keoughs now bring this appeal.

II.

The basic issues in this appeal are whether Chuck Keough was afforded procedural due process at the December 9 meeting with Massey and at the December 14 meeting with the school board. The district court held that procedural due process re-

quirements had been satisfied on both occasions. We agree. The informal give-and-take sessions between Massey and Keough on December 9 met the procedural due process requirements for short-term suspensions. Furthermore, the school board complied with procedural due process when it imposed the long-term suspension on December 14. In short, at no time did the defendants' conduct in suspending Chuck Keough violate his fourteenth amendment due process rights.

### III.

#### A.

The Keoughs contend that the discussions between Massey and Keough on December 9 did not comport with procedural due process requirements for short term suspensions. They argue that the purpose of the meetings was not to discover the facts underlying the charges against Keough but instead to summarily punish him. They also argue that more formal procedures than a mere discussion between the two were required because the ten-day suspension occurred during final exams and thus had a long-term effect. More specifically, they contend that because of the long-term effect of the ten-day suspension, they should have received notice of the charges, including a witness list and summary of witness' testimony prior to the suspension. We disagree with these contentions and affirm the district court's finding that Keough was afforded procedural due process for the short-term suspension imposed on December 9.

The United States Supreme Court, in *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), has specifically addressed the requirements of due process before the imposition of a short-term suspension. The Court determined that a ten-day suspension was not *de minimus* and held that at the very minimum, students "must be given *some* kind of notice and afforded *some* kind of hearing." 419 U.S. at 576–79, 95 S.Ct. at 737–39, 42 L.Ed.2d 725 (emphasis in original). The timing and content of the notice and the nature of the

hearing may vary in each situation, but the court defined minimal due process:

> [T]he student [must] be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story .... There need be no delay in the time "notice" is given and the time of the hearing. In the great majority of the cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred. We hold only that, in being given an opportunity to explain his version of the facts at this discussion, the student first be told what he is accused of doing and what the basis of the accusation is.

*Id.* at 581–82, 95 S.Ct. at 740, 42 L.Ed.2d 725. The Court observed that this "informal give-and-take" between student and disciplinarian may add little to the fact-finding process when the disciplinarian personally witnesses the student's conduct, but it allows the student an opportunity to state his case as he sees it. *Id.* at 584, 95 S.Ct. at 741, 42 L.Ed.2d 725.

Here, Keough was allowed an informal give-and-take session with Massey immediately preceding the imposition of the ten-day suspension. In fact, there were two such sessions with Massey, and the misconduct took place in Massey's presence. The record clearly supports the district court's finding that Keough had the opportunity to state his case.

Keough's argument that more formal procedures were required in this particular ten-day suspension because final examinations took place during the suspension period is unpersuasive. *Goss* makes no distinction between ten-day suspensions that occur during examination periods and those that do not, and, it seems to us, for obvious reasons. In any school year, a number of examinations may take place at various times throughout a given semester which are crucial to a student's performance for the semester. Thus, to hold that the *Goss* guidelines do not apply to suspension periods that include scheduled examinations

would significantly undermine, if not nullify, its definitive holding. We therefore decline to construe it as requiring formal proceedings for short-term suspensions occurring during scheduled examinations.

Second, we note that the school board, at its December 14 meeting, decided to allow Keough to take his final examinations, and the record reflects that he did so. The very harm that the plaintiffs rely upon to persuade us to require more formal procedures never, in fact, took place. The ten-day suspension had no greater effect than a suspension during a non-examination period, and Chuck Keough was not harmed by the timing of the ten-day suspension. There simply was no violation of procedural due process in the December 9 sessions between Massey and Keough. The district court's judgment is affirmed in this respect.

### B.

A slightly more difficult question concerns whether the Keoughs were afforded procedural due process in the December 14 meeting before the school board. The Keoughs contend that they were not fully apprised of the nature of the hearing or the charges that were to be considered. They further contend that because the action taken at that meeting resulted in their son's expulsion, they should have been given, prior to the hearing, a list of witnesses who were to testify against him and a summary of their testimony.

In regard to the first contention, we find that the letter from Superintendent Clanton substantially set forth the charges against Keough.[1] Further, it expressly stated that Keough's status as a student

would be decided at the hearing; it did not indicate that the hearing would be confined to only a review of the previously imposed ten-day suspension. Moreover, when one considers that a ten-day suspension had already been imposed, it is readily apparent that they were informed that more serious sanctions were possible.[2] The district court did not err in finding that the Keoughs were fully aware of the charges and that more serious penalties were being considered.

The Keoughs' assertion that before the hearing they should have received a list of witnesses and summary of their testimony is not without some basis. This court indeed has held that usually these safeguards should be afforded to satisfy the fourteenth amendment in cases involving long-term suspensions. *See Sweet v. Childs,* 507 F.2d 675, 681 (5th Cir.1975); *Boykins v. Fairfield Board of Education,* 492 F.2d 697, 701 (5th Cir.1974); *Pervis v. LaMarque,* 466 F.2d 1054, 1058 (5th Cir. 1972); *Williams v. Dade County School Board,* 441 F.2d 299, 302 (5th Cir.1971); *Dixon v. Alabama State Board of Education,* 294 F.2d 150, 159 (5th Cir.1961). We have also cautioned, however, that the process due may vary in particular cases depending upon the circumstances. *McLain v. Lafayette County Board of Education,* 673 F.2d 106, 110 (5th Cir.1982); *Dixon,* 294 F.2d at 158. "[T]he standards of procedural due process are not wooden absolutes. The sufficiency of procedures employed in any particular situation must be judged in the light of the parties, the subject matter and the circumstances involved." *Ferguson v. Thomas,* 430 F.2d 852, 856 (5th Cir.1970); *see also Boykins,* 492 F.2d at 701 ("Basic fairness and integ-

---

**1.** The Clanton letter set forth the following charges: (1) repeated misbehavior in school, (2) refusing to sit in an assigned seat, (3) use of profanity, (4) walking off campus two times without permission, and (5) challenging Massey to a fight. The charges contained in the witness testimony summaries are substantially the same as those in the Clanton letter: (1) Keough was rude and refused to follow directions of school officials, (2) he interfered with the learning process, (3) he left the school building without permission, and (4) he became belligerent in

Massey's office on December 9, and challenged Massey to a fight. The only charge contained in a witness summary that was not included in the letter was that Keough had participated in a fight on campus.

**2.** The portent of the Clanton letter becomes even more apparent when one considers that it advised the Keoughs of their right to have an attorney present at the December 14 hearing.

rity of the fact-finding process are the guiding stars").

Here, it is clear that the Keoughs received a list of witnesses and a summary of their testimony after they arrived at the December 14 hearing. The ultimate question therefore is whether earlier notice of witnesses was necessary to satisfy procedural due process within the context of this case. We hold that it was not required here. We are guided in our analysis by reason. Reason takes into account the reality that, though very serious, the matter we are considering is a routine disciplinary matter within a public school, and is not a sophisticated court trial involving complex fact or legal issues. With this predicate in mind, we first note that the Keoughs were fully apprised of the charges, the underlying facts supporting those charges, and the nature of the hearing. As we have already stated, the Keoughs were apprised that the school board would consider sanctions more severe than the previously imposed ten-day suspension. In addition, the Clanton letter clearly and accurately detailed the charges against young Keough, and advised the parents of their right to have an attorney.

Next, the witnesses provided no surprises against which the Keoughs were unprepared to defend or which otherwise prejudiced their ability to present their case. Five witnesses other than Massey testified at the hearing.[3] One of them, Tommie Neal, Keough's teacher, testified that Keough left the school building without permission on December 9. This fact certainly could not have surprised the Keoughs since it was one of the charges listed in the letters. Moreover, Keough admitted at the hearing before the district court that he had, in fact, left school on that day. Another witness, Kenneth Thompson, the assistant principal, testified to Keough's belligerent behavior in the second meeting before Massey on December 9

and that Keough challenged Massey to a fight at that time. Again, this charge was included in the letters and Thompson's presence or testimony could not have surprised Keough.

Three other witnesses testified to matters not confined to December 9. Betsy Scott, a teacher, testified to Keough's generally rude behavior, and another teacher expressed his opinion that Keough's behavior interfered with the learning process. John Taylor, a bus driver, related the occurrence of a fight between Keough and another student. The cumulative effect of this testimony could not have reasonably surprised or prejudiced the Keoughs. Scott's testimony concerning Keough's rude behavior was not substantially different from that of Massey or Thompson. Taylor's testimony could not have been a surprise because Keough admitted before the district court that he was aware of two occasions in which he had violated school rules by fighting with other students. One of these incidents was the same one that Taylor described at the board hearing. The only other testimony at the hearing, apart from Massey's, was the opinion of a teacher that Keough interfered with the learning process and his statement that he would not allow him in his class again. This opinion surely was no surprise in view of the nature of Keough's misconduct and in view of notice that the hearing would determine his status as a student. In sum, the Keoughs suffered no material prejudice by proceeding to hearing before the school board without a witness list. The district court correctly held that procedural due process was not violated at the December 14 meeting.

It follows, therefore, in view of our disposition of the issues in this case, that the district court *did not abuse its discretion in denying the motion for a preliminary injunction.*

---

**3.** There is no transcribed record of who testified at the December 14 hearing or what was said. Jewell Keough, however, testified before the district court that, with the exception of Massey, only those persons whose names appeared on the witness list testified at the hearing. Further-

more she stated that the testimony of the witnesses was substantially the same as, and confined to that contained in their summary of testimony. For the purposes of this appeal, therefore, we accept the summaries as accurate.

## IV.

The Keoughs further contend that the district court erred, and presumably that they are entitled to a new trial, because it considered Keough's guilt or innocence when the only issue was whether he had been afforded due process. They base this contention on the district court's separate alternative ground for its decision, that even if procedural due process had been violated, the Keoughs could not prevail because they suffered no attributable harm. The court based this finding on Keough's admission of the truth of the charges. We reject the Keoughs' contention.

 To establish a denial of procedural due process, a party must show substantial prejudice. *U.S. Pipe & Foundry v. Webb*, 595 F.2d 264, 274 (5th Cir.1979); *Arthur Murray Studio of Washington, Inc. v. Federal Trade Commission*, 458 F.2d 622, 624 (5th Cir.1972). Whether Keough admitted the charges therefore is relevant in determining substantial prejudice or harm. The record clearly reflects that Keough admitted cursing Massey on December 9, and leaving school without permission. He further admitted that he was aware that cursing was a violation of school rules and that his cursing caused the ten-day suspension. In addition, Keough admitted that he fought with other students on two occasions, which was also against school rules. Clearly there was substantial evidence to support the district court's finding that Keough admitted the charges and therefore his suspension did not result from a procedural due process deprivation. *See* Fed.R.Civ.P. 52. The district court did not err in finding that a procedural due process violation, if any, did not cause injury to Keough.

In conclusion, we hold that the district court did not err in denying the Keoughs' motion for a preliminary injunction. The district court correctly held that Keough was afforded procedural due process in both hearings before the principal and the school board and correctly dismissed the complaint. The judgment is

AFFIRMED.