Michael A. DURSO, Appellant,

v.

Eric L. TAYLOR, Appellee.

No. 89–CV–408.

District of Columbia Court of Appeals.

Argued Oct. 16, 1990.

Decided Jan. 29, 1993.

450

John R. Risher, Jr., with whom Jeanne Philbin, Washington, DC, was on the brief, for appellant.

Nathaniel H. Speights, Washington, DC, for appellee.

Donna M. Murasky, Asst. Corp. Counsel, with whom Herbert O. Reid, Sr., Corp. Counsel, at the time, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, filed a memorandum for the District of Columbia in support of appellant.

Before TERRY, FARRELL and WAGNER, Associate Judges.

WAGNER, Associate Judge:

■ Appellant, Michael A. Durso (Durso), appeals from an interlocutory order denying his motion for summary judgment which was based in part on an assertion of qualified immunity against appellee's claim under 42 U.S.C. § 1983 (1981) and official immunity against appellee's common law claims.[1] Appellee, Eric L. Taylor (Taylor), a former student at Woodrow Wilson Senior High School in the District of Columbia,

---

1. This court has jurisdiction of this interlocutory appeal under a well recognized collateral order exception to the general finality requirement of D.C.Code § 11–721(a)(1) (1989). *Mitchell v. Forsyth*, 472 U.S. 511, 526–27, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985); *Stein v. United States*, 532 A.2d 641, 643–44 (D.C.1987). Accordingly, this court denied earlier appellee's motion to dismiss on jurisdictional grounds.

filed this suit alleging that Durso, the school's principal at the time, violated his constitutional rights by improperly suspending him from school and subsequently refusing to readmit him.[2] Appellee also asserted claims for damages for slander and invasion of privacy. Appellant challenges the trial's court order denying his motion for summary judgment on the grounds that: (1) the doctrine of qualified immunity is an absolute bar to appellee's federal claim; (2) appellant did not violate appellee's constitutional or federally protected rights; and (3) appellee's remaining claims either lack merit or are barred by the doctrine of official immunity. We hold that the doctrine of qualified immunity bars appellee's § 1983 claim and that the doctrine of official immunity bars in part appellee's local law claims. We do not reach the merits of appellant's other challenges to appellee's remaining claims for lack of jurisdiction.

I.

The undisputed facts underlying this controversy are as follows. Taylor was arrested at Wilson High School on April 14, 1986 by Metropolitan Police officers in the presence of Durso. The officers arrested appellee pursuant to a warrant issued by the Superior Court of the District of Columbia based upon a complaint alleging that Taylor, while armed, had raped a fifteen year old Wilson High School student in February 1986. The rape was alleged to have occurred at appellee's home. Appellee, who was almost seventeen years old at the time, was charged as an adult.[3] At the time of his arrest, Taylor had in his possession a concealed weapon, i.e., a blackjack.[4] After the arrest, as many as twenty students saw the police escort Taylor away in handcuffs.

The day the police arrested Taylor, Durso informed him that he could not return to school until Durso spoke with Taylor's mother. The following day, Durso met with Taylor and his mother to discuss arrangements for Taylor's education while the criminal charges were pending.[5] At that meeting Durso tried to convince appellee to transfer to another school. Durso also offered to make arrangements for Taylor to receive instructional materials at home until the transfer was completed. Appellee's mother, Ms. Taylor, initially agreed to her son's participation in the home-study program while the charges against him were pending. However, on Friday, April 18, 1986, Ms. Taylor talked with the assistant superintendent of schools about the proposed transfer and arranged to meet with her on Monday, April 21, 1986. At that meeting, the superintendent also suggested to Ms. Taylor that a transfer would be best for everyone involved. Ms. Taylor testified at deposition that she told them, "fine, go ahead" and that "[t]hey could draw any conclusion they wanted to" from the remark. However, Ms. Taylor requested a hearing, which was scheduled on Monday, April 28, 1986, the earliest available date. Taylor did not try to return to school between April 17 and April 28. During that period, Taylor continued to receive home-study for some classes. Both the superintendent and Durso believed at that time that the Taylors were in agreement with the plans for the transfer.

The hearing officer determined after the hearing that Taylor should be readmitted to the school promptly, although the writ-

2. Taylor's mother, Elizabeth Taylor, also sued appellant individually and as next friend of her son. The trial court granted appellant's motion to dismiss all claims of Elizabeth Taylor individually as well as Eric Taylor's claims that Durso denied him a pre-suspension and post-suspension hearing and attempted to deny him an education.

3. An individual sixteen years of age or older may be charged as an adult for certain enumerated felonies, including forcible rape. *Catlett v. United States*, 545 A.2d 1202, 1208 (D.C.1988),

*cert. denied*, 488 U.S. 1017, 109 S.Ct. 814, 102 L.Ed.2d 803 (1989); *Pendergrast v. United States*, 332 A.2d 919, 922 (D.C.1975); D.C.Code § 16–2301(3)(A) (1989).

4. The possession of a blackjack is a crime in this jurisdiction. D.C.Code § 22–3214(a) (1989).

5. The alleged victim expressed fear of Taylor and ceased attending classes. She did not return to the school until after Taylor did.

ten decision to that effect was not issued until May 5, 1986. The hearing officer's decision was based upon his conclusion that: (1) no notice of an involuntary transfer or suspension in excess of two days had been given; (2) the law presumed the innocence of the accused; and (3) there was no showing that Taylor was a danger to himself or others.

Taylor returned to school on April 29, 1986 before the issuance of the hearing officer's written decision, and Durso refused to admit him. Ms. Taylor protested Durso's actions to the superintendent. After Ms. Taylor informed the superintendent that she definitely wanted her son to return to Wilson, the superintendent directed Durso to admit Taylor in a memorandum dated April 30, 1986. Durso responded in writing that he could not do so and therefore requested a reassignment and a leave of absence in the interim. Taylor attended and remained at school on April 30, 1986 despite Durso's refusal to admit him the day before. On April 30, there was a school-wide assembly and a demonstration by Wilson students concerning these events which the media covered. During an interview, Durso explained, without naming any of the individuals involved, that he was concerned for the safety of the accused and the victim.

The Board of Education convened on May 1, 1986 to consider the request of the Superintendent of Schools to confirm the superintendent's authority to "transfer a student accused of a crime without first holding a hearing." The Board adopted an emergency rule providing for that authority which was codified later as 5 DCMR § 2108 (1987).[6]

The criminal charges against Taylor were ultimately dismissed. Taylor graduated with his class. About one year later, Taylor filed this action.

## II.

 Appellant argues that the trial court improperly rejected his claim that the doctrine of qualified immunity bars appellee's federal claims. The doctrine of qualified immunity is an affirmative defense available to government officials performing discretionary functions which generally shields them from liability for civil damages for conduct which does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 818, 102 S.Ct. 2727, 2736–37, 2738, 73 L.Ed.2d 396 (1982). The scope of immunity afforded local school officials is extremely broad. *Pollnow v. Glennon,* 757 F.2d 496, 500 (2d Cir.1985). The doctrine provides a government official with greater protection than the defense that no constitutional violation occurred. *Gooden v. Howard County,* 917 F.2d 1355, 1360–61 (4th Cir.1990), *rev'd on other grounds,* 954 F.2d 960 (4th Cir.1982) (en banc). The defense is available even to a defendant who violates the constitutional rights of another, unless it is established that the official's conduct was "unreasonable under the applicable standard." *Davis v. Scherer,* 468 U.S. 183, 190, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984). Officials do not lose this qualified immunity merely because their conduct violates some statutory or administrative rule. *Id.* at 194, 104 S.Ct. at 3019.

 The test for applicability of the doctrine focuses upon the objective legal

---

**6.** *5 DCMR § 2108 (1987) reads in pertinent part as follows:*
 Whenever a student is charged with or accused of a criminal offense, either as a juvenile or an adult, the Superintendent or designee, based upon a review of the allegations associated with the arrest or accusation, shall have the authority to effect an immediate involuntary transfer without meeting the requirements of §§ 2107 and 2509 of this title if the Superintendent or designee, based upon a preponderance of the evidence, is of the opin-

ion that the peace, health, safety or welfare of the students or staff of the D.C. Public Schools may be distrubed [sic] by maintaining the student in his or her prior placement.
 The adult student, or minor student's parent or guardian, may subsequently request a hearing to review the involuntary transfer pursuant to §§ 2504.11 and 2504.12 and 2504.13 of this title. A final administrative decision shall be rendered thereafter pursuant to §§ 2505 and 2506 of this title.

reasonableness of the official's action when measured against clearly established law. *Harlow, supra,* 457 U.S. at 819, 102 S.Ct. at 2738–39; *Davis, supra,* 468 U.S. at 191, 104 S.Ct. at 3017–18. "A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue." *Davis,* 468 U.S. at 197, 104 S.Ct. at 3021. The use of an objective standard to determine the reasonableness of an official's conduct is deemed to protect both the public and private interests involved. As the Supreme Court stated in *Harlow:*

> [W]here an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action. But where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken "with independence and without fear of consequences."

*Harlow,* 457 U.S. at 819, 102 S.Ct. at 2738–39 (quoting *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967)). Further, it is intended that the immunity question be susceptible to disposition on summary judgment and that discovery be foreclosed until the issue is resolved. *Id.* at 818, 102 S.Ct. at 2738. Since qualified immunity, where applicable, is an absolute bar to suit "rather than a mere defense to liability," its benefit is lost where such cases are erroneously allowed to proceed to trial. The "objective legal reasonableness" test allows for resolution of these issues at an early stage of the proceedings.

■ In reviewing the denial of a claim of immunity, the relevant legal question is "whether the legal norms allegedly violat-ed by the defendant were clearly established at the time of the challenged action or, in cases where the [trial] court has denied summary judgment for the defendant on the ground that even under the defendant's version of the facts the defendant's conduct violated clearly established law, whether the law clearly proscribed the actions the defendant claims he took." *Mitchell v. Forsyth, supra,* note 1, 472 U.S. at 528, 105 S.Ct. at 2816–17. The test requires three determinations: (1) the specific right allegedly violated; (2) "whether the right was 'so clearly established' as to alert a reasonable [government official] to its constitutional parameters"; and, (3) whether a reasonable official could have believed that the conduct was lawful. *Gooden, supra,* 917 F.2d at 1361. We turn then to that three-part inquiry.

### A. The right allegedly violated and whether "clearly established"

■ We consider together the first two prongs of the inquiry, the nature of the right allegedly violated and whether the asserted right was " 'clearly established' in the 'particularized' sense that '[t]he contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Id.* (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). Appellee's federal claim is predicated on 42 U.S.C. § 1983 (1981).[7] To state a claim under § 1983, a plaintiff must allege violation of a right secured by the Constitution and laws of the United States. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988); *Martinez v. California,* 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980). One cannot claim a " 'violation of § 1983' " because the Act provides only a remedy rather than a substantive right. *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 618, 99 S.Ct. 1905, 1916,

---

7. Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

60 L.Ed.2d 508 (1979); *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). To prove the claim under § 1983, the rights violated under color of law must be those secured by the Constitution or federal law. *See Woodward & Lothrop v. Hillary*, 598 A.2d 1142, 1145 (D.C.1991).

 Appellant argues that appellee cannot prevail on his § 1983 claim because Taylor had no substantive or constitutional right to attend school. Indeed, education is not a fundamental right for which explicit protection is provided under the Constitution. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35, 37, 93 S.Ct. 1278, 1297–98, 1299, 36 L.Ed.2d 16 (1973). However, at least where state law provides an entitlement to a public education, a student's interest qualifies for protection under the Due Process Clause of the Constitution. *Goss v. Lopez*, 419 U.S. 565, 573–74, 95 S.Ct. 729, 735–36, 42 L.Ed.2d 725 (1975); *see Paul v. Davis*, 424 U.S. 693, 711, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976); *see also Zamora v. Pomeroy*, 639 F.2d 662, 668 (10th Cir.1981). In *Goss*, the Supreme Court determined that students entitled to an education under state law, facing temporary school suspensions, have interests which qualify for constitutional due process protection. *Goss, supra*, 419 U.S. at 573–74, 95 S.Ct. at 735–36. The Court held that "[a]t the very minimum ..., students facing suspension and the consequent interference with a protected property interest must be given *some* kind of notice and afforded *some* kind of hearing." *Id.* at 579, 95 S.Ct. at 738–39 (emphasis in original). Such interests trigger constitutional protection because they are initially recognized by state law. *Paul*, 424 U.S. at 710, 96 S.Ct. at 1164–65. *Goss* arose in Ohio where the state had enacted a law granting a right to a free education to all residents between five and twenty-one years of age. *Goss*, 419 U.S. at 573, 95 S.Ct. at 735. There was also in effect in Ohio a compulsory attendance law. *Id.* These factors weighed in the court's determination that an interest protected by due process had been established.

 The District of Columbia has no comparable law extending the right of a public education to a person, who like appellee, was sixteen years of age. The ages for compulsory school attendance are between seven and sixteen years. D.C.Code § 31–401 (1988). Thus, a critical factor giving rise to a right commanding due process protection under the Fourteenth Amendment which was present in *Goss* is not present here. Nevertheless, a claim to a benefit or entitlement may be premised on rules promulgated by state officials. *Goss, supra*, 419 U.S. at 572–73, 95 S.Ct. at 735. When so created, a citizen can demand due process protection. *Id.* At the time pertinent to this proceeding there was in effect a rule promulgated by the Board of Education that "[e]ach student has a right to a meaningful public education ..." 5 DCMR § 2401.1, and "access to a meaningful curriculum." *Id.* 2401.2. Such a regulation may form the basis for a claim of entitlement which demands due process protection. However, we need not resolve that issue because, even assuming appellee's entitlement to due process protection, the undisputed facts show that appellant did not violate appellee's due process rights. "[W]hether the plaintiff has been deprived of a right 'secured by the Constitution and laws' of the United States" is the first inquiry in any § 1983 suit. *Martinez, supra*, 444 U.S. at 284, 100 S.Ct. at 558 (quoting *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692–93, 61 L.Ed.2d 433 (1979)). The determination of that question may be dispositive. *Id.*

 The Supreme Court made clear in *Goss* "that the interpretation and application of the Due Process Clause are initially practical matters and that " '[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation' " *Goss, supra*, 419 U.S. at 578, 95 S.Ct. at 138 (quoting *Cafeteria Restaurant Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748–49, 6 L.Ed.2d 1230 (1961)). The type of notice and hearing required necessarily depends upon "appropriate accommodation of the competing interests involved." *Id.* at 579, 95 S.Ct. at 738–39. In this case,

those interests include the student's right to an education without an unfair or unfounded suspension and the school's interest in ensuring an environment which will not be disruptive to the education of its students. Although holding that due process requires oral or written notice of the charges against a student faced with suspension, the Supreme Court recognized that immediate action may be necessary under some circumstances and that prior notice may not be feasible. *Id.* at 580, 582, 95 S.Ct. at 739, 740. A hearing should generally precede the student's suspension, but the complexity of the problems facing schools today requires recognition of the realities which the Supreme Court observed in *Goss:*

> [T]here are recurring situations in which prior notice and hearing cannot be insisted upon. Students whose presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process may be immediately removed from school. In such cases, the necessary notice and rudimentary hearing should follow as soon as practicable....

*Id.* at 582–83, 95 S.Ct. at 740–41.

In considering due process challenges in disciplinary matters, courts following *Goss* have shown the flexibility implicit in the decision. In *Keough v. Tate County Bd. of Educ.*, 748 F.2d 1077 (5th Cir.1984), a high school senior was called into the principal's office on December 9, 1983, for failing to sit in his assigned seat in study hall. The student became angry, cursed at the principal, and left school without permission. When the student later refused to apologize, the principal gave him the choice of a paddling or a ten-day suspension. The student chose the suspension, and his parents met with the school superintendent, who informed them that a hearing would be held on January 3. The parents requested an earlier hearing (December 14)

to assure that their son could take final examinations. The school board allowed the student to take his examinations, but suspended him the following semester. The Fifth Circuit concluded that "[t]he informal give-and-take sessions between [the principal] and [the student] on December 9 met the procedural due process requirements for short-term suspensions." *Id.* at 1080. The court rejected appellant's argument that more formal procedures were required and held that " '[t]he sufficiency of procedures employed in any particular situation must be judged in light of the parties, the subject matter and the circumstances involved.' " *Id.* at 1081 (quoting *Ferguson v. Thomas*, 430 F.2d 852, 856 (5th Cir.1970)).

The Third Circuit Court of Appeals has also ruled that an informal meeting in the principal's office satisfied due process for a ten-day school suspension and a sixty-day suspension from the school's football team imposed upon the student for drinking alcohol. *Palmer v. Merluzzi*, 868 F.2d 90 (3d Cir.1989). The court rejected the argument of the student's father that additional procedural safeguards were required because of the athletic suspension, which the school official failed to mention in the meeting. *Id.* at 94. The parent claimed that the action would impede the student's chances of playing college football and obtaining a scholarship. *Id.* at 92. Nevertheless, the court concluded that the meeting in the principal's office satisfied due process. *Id.* at 96.

Similarly, the informal hearing afforded Taylor by Durso in this case comports with the requirements set forth in *Goss*. Appellant informed Taylor at the time he was arrested that he must attend a meeting with his mother to discuss a proposed transfer. That meeting occurred only two days after Taylor was arrested and removed from the school by the police on a warrant charging armed rape.[8] Initially, it

---

8. Although not necessarily the basis for Durso's action, Taylor's possession of a prohibited weapon at the time of his arrest in the presence of the principal provided a basis for a ten-day suspension. *See* 5 DCMR § 2501.6 (1983). The Board's present rules, promulgated shortly after Taylor's arrest, provide that a student is subject to an automatic major suspension and involuntary transfer if found in possession of any weapon, tool or instrument capable of inflicting bodily injury. 5 DCMR § 2501.1(a)(7) (1991). An automatic major suspension is "the denial to a

appeared that Taylor and his mother agreed to the home-study arrangement. Upon request, appellant and his mother obtained a second informal meeting with the assistant superintendent of schools. Again, Ms. Taylor indicated her assent to the home-study arrangement, and the assistant superintendent informed Taylor and his mother of her right to a further hearing on the proposed transfer. Appellee obtained that hearing on the first available date, April 28th. The two informal hearings and subsequent formal one were adequate to satisfy due process under the circumstances. *See Goss, supra,* 419 U.S. at 579, 95 S.Ct. at 738–39; *see also Keough, supra,* 748 F.2d at 1080. Appellee was provided with notice and an opportunity to state his position at informal hearings. He also received notice and a formal hearing at the earliest available date once Ms. Taylor let it be known that she and her son no longer agreed to the home-study arrangement and transfer.

 Although appellant subsequently disobeyed the oral order of the hearing officer by excluding Taylor from school for one day (April 29), Taylor did in fact return to school on April 30. The question is whether such a violation of the school board's ruling creates a right actionable under § 1983. "[N]ot every injury in which a state official has played some part is actionable under [§ 1983]." *Martinez, supra,* 444 U.S. at 285, 100 S.Ct. at 559. A violation of the decision of the local school board is not the proper subject of a claim under § 1983. *See Davis, supra,* 468 U.S. at 194 n. 12, 104 S.Ct. at 3019 n. 12. *Pollnow, supra,* 757 F.2d at 501. Here appellant violated the order, resulting in a one-day suspension for appellee, but the notice and hearing requirements of due process were met. Moreover, "[t]o establish a denial of procedural due process, a party must show substantial prejudice." *Keough, supra,* 748 F.2d at 1083. The one day that Durso excluded appellant from school following the hearing officer's oral ruling is not so substantial as to support a

procedural due process claim. *Id.* Thus, the answer to the first factor under *Martinez,* 444 U.S. at 284, 100 S.Ct. at 558 and *Gooden, supra,* 917 F.2d at 1361, whether appellee was deprived of any constitutional right, disposes of the case.

### B. *Qualified immunity: objective legal reasonableness.*

Even if Durso had violated Taylor's right to due process, we hold that he had qualified immunity for his actions. The availability of the doctrine of qualified immunity depends upon the objective legal reasonableness of his conduct. *Harlow, supra,* 457 U.S. at 818, 102 S.Ct. at 2738; *Davis, supra,* 468 U.S. at 191, 104 S.Ct. at 3017. The critical question is whether Durso reasonably could have believed that he had authority not to readmit Taylor while the adult charges were pending, notwithstanding the hearing officer's ruling that Taylor could not be transferred involuntarily. The issue is a legal one, focusing on the objective legal reasonableness of the official's action when measured against clearly established law. *Harlow, supra,* 457 U.S. at 818, 102 S.Ct. at 2738.

 With respect to any claim based upon alleged due process violations arising out of Durso's initial actions excluding Taylor from school, Taylor's rights were not so clearly established. The uncertainty surrounding appellant's right to the protections outlined in *Goss* because of the absence of any statutory right to an education for one of appellee's age undercuts any showing that Taylor's rights were clearly established. Moreover, it was not objectively unreasonable for the school to take action to make alternative arrangements for Taylor's education under the totality of the circumstances. Durso had observed Taylor arrested for a serious felony on a complaint of a fellow-student. The arrest occurred on the school grounds when Taylor had in his possession a prohibited weapon. It was surely reasonable for

---

student of the right to attend school, including all classes and school activities, for a period of not less than twenty-five (25) school [ ] days nor

more than two (2) semesters." 5 DCMR § 2500.5(b) (1991).

Durso to conclude that Taylor's presence at Wilson during the pendency of the adult criminal charges posed the threat of disrupting the academic environment, particularly in light of the reactions and demonstrations by the students and the reaction of the complaining witness which were reported to the principal. It is also significant to a determination of objective reasonableness of Durso's decision that the assistant superintendent agreed with Durso's decision to make ·alternative arrangements for Taylor's education, and the Board, finding no explicit rule to meet the exigencies of the situation, immediately adopted a rule for prehearing, involuntary transfer.

■ It was also reasonable for appellant to believe that the hearing officer lacked the authority to overrule Durso's non-disciplinary decision that Taylor should be placed on home-study while the adult charges were pending because Durso's decision was different from the decision reached by the hearing officer, which concerned Taylor's involuntary transfer. Appellant's failure to follow an order before issuance of the written decision and which was susceptible of an alternative interpretation as to its scope was not so arbitrary as to violate due process. *Pollnow, supra,* 757 F.2d at 501. There was in effect no explicit regulation excluding this discretionary action. Therefore, Taylor's one-day exclusion following the hearing officer's decision cannot be regarded as violating a clearly established right.

Since Durso did not violate a clearly established policy about which a reasonable person would have known, the broad immunity accorded school officials bars the federal claims. *Mitchell, supra,* 472 U.S. at 528, 105 S.Ct. at 2816–17; *Pollnow, supra,* 757 F.2d at 501. Therefore, appellant's motion for summary judgment should have been granted on appellee's federal claim on the basis of qualified immunity, and appellee's request for discovery on this issue

pending disposition of the immunity claim should have been denied.

### III.

■ Appellee also sued Durso for slander for imputing to him the commission of a crime and lack of chastity. This claim stems from statements made by Durso to the news media regarding an unnamed student's (Taylor) arrest and the actions Durso took as a result. In a related privacy claim, appellee alleged that appellant humiliated him by disclosing facts concerning his arrest. Appellant invites us to rule on the merits of these claims.[9] We lack jurisdiction in this pre-trial appeal to rule on the underlying merits of these common law claims. *See Stein, supra,* note 1, 532 A.2d at 643–44. Therefore, we consider only the immunity question in this interlocutory appeal.

■ We turn first to appellant's claim of immunity from appellee's complaint for damages for slander and invasion of privacy. Whether an official is protected from common law tort liability by the doctrine of immunity depends on the circumstances surrounding the alleged actionable conduct. *See Moss v. Stockard,* 580 A.2d 1011, 1020 (D.C.1990). Publicly expressed statements by an official about matters of wide public interest in the line of duty may render applicable the doctrine of immunity. *Barr v. Matteo,* 360 U.S. 564, 575, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434 (1959). We follow the immunity rule derived from *Barr* as explicated in *Westfall v. Erwin,* 484 U.S. 292, 297–98, 298 n. 4, 108 S.Ct. 580, 584–85, 584 n. 4, 98 L.Ed.2d 619 (1988). *See Moss,* 580 A.2d at 1020. Absolute immunity is available when the official acted within the outer perimeter of his official duties in the exercise of a discretionary, as opposed to ministerial, function. *Barr,* 360 U.S. at 575, 79 S.Ct. at 1341; *Moss,* 580 A.2d at 1020. Appellant's summary judgment motion as it relates to

---

9. Appellant asserts that truth is a defense to the slander claim. *See Farrington v. Bureau of Nat'l Affairs,* 596 A.2d 58, 59–60 (D.C.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1944, 118 L.Ed.2d 549 (1992); *see also Curtis Publishing Co. v.*

*Vaughan,* 107 U.S.App.D.C. 343, 350, 278 F.2d 23, 30, *cert. denied,* 364 U.S. 822, 81 S.Ct. 57, 5 L.Ed.2d 51 (1960). Appellant also contends that any opinions he expressed are privileged.

the application of the doctrine of immunity to appellee's libel and invasion of privacy claims is not sufficiently developed to support appellant's argument that summary judgment should have been granted. *See Moss*, 580 A.2d at 1021. Appellant's motion was not supported by facts sufficient to establish as a matter of law that appellant's statements were made in the course of his official conduct or "within the outer perimeter" of his line of duty. *Barr*, 360 U.S. at 575, 79 S.Ct. at 1341. Accordingly, resolution of the question must await further proceedings.

Finally, there remains for consideration any claim Taylor may have under local law for Durso's action in excluding him from school. The crux of this aspect of the claim, according to Taylor, is that "Durso willfully acted to exclude [him] from school and did so without regard to governing regulations." Appellant argues that he has essentially the same immunity under local law that he has under federal law even for his refusal to comply with the readmission directives.[10]

■ We consider first the immunity issue raised by appellant. In the District of Columbia the doctrine of sovereign immunity protects an official from suits for acts committed in the exercise of a discretionary function. *Rustin v. District of Columbia*, 491 A.2d 496, 500 (D.C.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 343, 88 L.Ed.2d 290 (1985); *Wade v. District of Columbia*, 310 A.2d 857, 860 (D.C.1973). Discretionary acts are those " 'involving policy considerations' where 'no statutory or regulatory requirements [limit] the exercise of policy discretion.' " *Rustin*, 491 A.2d at 500 (quoting *Chandler v. District of Columbia*, 404 A.2d 964, 966 (D.C.1979)). An action is deemed to be discretionary "if the prospect of liability for the decisions the [official] must make in the course of his performance would unduly inhibit the [official's] ability to perform his function." *Rieser v. District of Columbia*, 183

U.S.App.D.C. 375, 388, 563 F.2d 462, 475 (1977), *modified in part on other grounds*, 188 U.S.App.D.C. 384, 580 F.2d 647 (1978) (en banc). "Ministerial acts are those which require 'the execution of a policy as distinct from its formulation.' " *Rustin*, 491 A.2d at 500 (quoting *Biscoe v. Arlington County*, 238 U.S.App.D.C. 206, 216, 738 F.2d 1352, 1362 (1984), *cert. denied*, 469 U.S. 1159, 105 S.Ct. 909, 83 L.Ed.2d 923 (1985)). An official acting within the scope of his or her official duties is protected from suits for civil damages resulting from "a mistake of fact occurring in the exercise of his judgment or discretion" or "an erroneous construction and application of the law." *Cooper v. O'Connor*, 69 App.D.C. 100, 103, 99 F.2d 135, 138, *cert. denied*, 305 U.S. 643, 59 S.Ct. 146, 83 L.Ed. 414 (1938).

■ Under these principles, at least with respect to Durso's pre-hearing conduct, the immunity doctrine forecloses suit against him. Essentially for the reasons set forth in Section II, *ante*, and particularly in view of the absence of clearly established law or policies to address the situation presented to Durso as well as the initial consent of the parent to the alternative education plan offered by the principal, we are persuaded that at the very least, Durso's actions are protected by immunity under *Cooper, supra. See id.* Appellant's actions were discretionary ones taken in the scope of his authority for which the doctrine of official immunity protects him.

■ Appellant's post-hearing conduct presents a different situation. Appellee claims that Durso refused to readmit him to school in spite of the hearing officer's decision and the directive of the superintendent following the hearing that he do so. At that point, Durso was required only to perform the ministerial function of carrying out the decision, rather than a discretionary function. Thus, under local immunity principles, Durso's conduct in that regard is not protected from any claim under local law based hereon. *See Rustin, supra*, 491 A.2d at 500.

**10.** It is the District of Columbia's position that Durso's actions did not violate any law for which there is a private cause of action in the District. Since our review is limited to the immunity question, we did not decide that question on this appeal. *See Stein, supra*, note 1, 532 A.2d at 643–44.

For the foregoing reasons, we hold that the trial court erred in denying Durso's motion for summary judgment on the § 1983 claim and the parallel local law claim (except for the claim involving Durso's post-hearing conduct) and in ordering Durso to submit to further discovery related to those issues. Accordingly, the case is remanded for the entry of summary judgment for appellant, Michael Durso, on the § 1983 claim and the claim made under local law for damages based on Durso's discretionary decisions to exclude Taylor from school prior to the hearing officer's decision. With respect to the claim based on Durso's refusal to readmit Taylor after the hearing officer's decision, we hold that Durso is not immune from suit, but we do not decide the merits of any of his other defenses. The case is remanded for further proceedings consistent with this opinion.

*Reversed in part, affirmed in part, and remanded for further proceedings.*