Juan HILL, a minor, By and Through his parents as natural guardians, Albert HILL and Edna Hill, Plaintiffs,

v.

RANKIN COUNTY, MISSISSIPPI SCHOOL DISTRICT, Ira Singleton, Ann Sturdivant, Elton Jay, Robert Whitehead, Shirley Hall, individually and in their official capacities as members of the Rankin County, Mississippi Board of Education, Mike Vinson, individually and in his official capacity as Superintendent of Education of the Rankin County, Mississippi School District, Thomas Stanford, individually and in his official capacity as Principal of the Rankin County School District, Susan Monsour, individually and in her official capacity as principal of the Northwest Attendance Center, Rankin County School District, and Kathy Carr, individually and in her official capacity as a Secretary of the Rankin County School District, Defendants.

Civ. A. No. J92–0172(L)(N).

United States District Court,
S.D. Mississippi,
Jackson Division.

Dec. 27, 1993.

Ellis Turnage, Morris, Turnage & Associates, Cleveland, MS, for plaintiffs.

Fred M. Harrell, Jr., Harrell & Rester, Brandon, MS, Richard C. Roberts, III, Jackson, MS, for defendants.

## MEMORANDUM ORDER AND OPINION

THOMAS S. LEE, District Judge.

This cause is before the court on the motion of plaintiff Juan Hill for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the issue of defendants' liability on his procedural due process claims. Defendants, the Rankin County School District and various officials thereof, responded to plaintiff's motion and filed a cross motion for summary judgment as to all of plaintiff's claims. Having considered the memoranda submitted by both parties, and other pertinent authorities, the court concludes that plaintiff's motion for partial summary judgment should be denied and that defendants' motion for summary judgment should be granted.

Plaintiff filed this action under 42 U.S.C. § 1983, alleging various acts of wrongdoing on the part of defendants. Specifically, he claimed that defendants denied him equal protection of the law, deprived him of substantive and procedural due process, subjected him to malicious prosecution and/or abuse of process, subjected him to double jeopardy and committed assault and battery. In response to defendants' request for summary judgment as to each of these claims, Hill has conceded that the entry of judgment in favor of the defendants is proper as to his claims of double jeopardy, equal protection, assault and battery, and malicious prosecution and/or abuse of process. Accordingly, those claims will be dismissed. The only issues remaining for the court's examination concern plaintiff's substantive and procedural due process claims. A history of the events giving rise to plaintiff's claims follows.

### I. Facts

Plaintiff was an eleventh grade student at Northwest Rankin Attendance Center (NWRAC) during the 1992–1993 school year, when the events giving rise to this lawsuit occurred. Prior to that time, plaintiff had established a long history of disciplinary problems at NWRAC, which had resulted in the implementation of a wide variety of alternative disciplinary measures by the school officials in an attempt to control him. Those measures included written reports, detention, corporal punishment, suspension and conferences with parents.[1] As early as October 1991, school officials had warned Hill's mother that his behavior was affecting the learning environment for other students at NWRAC, and that expulsion would be recommended if his disciplinary problems continued. These measures, though, were apparently to little avail as Hill, on January 24, 1992, approached another student, Shane Byrd, and struck him without provocation, knocking him to the ground.[2] On January 28, 1992, Susan Monsour, the principal of NWRAC, questioned Hill about this incident, at which time Hill admitted striking Byrd. Accordingly, Monsour advised Hill that he

---

1. It has been established that Hill had previously been disciplined for fighting, being tardy, skipping detention, insubordination, disrespectful behavior, threatening a school employee and threatening to leave campus at any time he desired.

2. Hill had threatened to punch Byrd, a student platoon sergeant, for ordering him to do push-ups during an ROTC class, and, in fact, did so after the class.

would be suspended for three days, with suspension to commence the following day.

Later the same day, however, there was another episode which involved Hill. This incident occurred when Kathy Carr, a secretary at NWRAC, observed plaintiff running down the hall and instructed him to stop running. When plaintiff did not heed Carr's warning, she grabbed him by the arm in order to stop him. Carr claims, although plaintiff disputes her assertions, that when she grabbed his arm, he swung around in a threatening manner, told Carr to get her "damn hands off" and called her a "bitch." Following this incident, plaintiff was immediately taken to Thomas Stanford, a division principal at NWRAC, for possible disciplinary action for his alleged misconduct. Stanford questioned Hill about the incident and then questioned Carr as to her version. Thereafter, Stanford requestioned Hill. As a result of his investigation, plaintiff was suspended for an additional five days.

The next day, Monsour informed Michael Vinson, Rankin County Superintendent of Education, that she was recommending Hill's expulsion. In a memorandum to Vinson to that effect, Monsour explained that previous disciplinary measures instituted by the school had failed to halt plaintiff's continuing misconduct and that in her opinion, expulsion was needed to protect the welfare of the staff and other students at NWRAC.[3] On February 10, 1992, following the expiration of his eight days of suspension, plaintiff, accompanied by his mother, returned to school to attend a required post-suspension conference with Monsour. When the Hills arrived, they were informed by Monsour that she had recommended that plaintiff be expelled. They were advised that plaintiff would not be allowed to return to school pending a hearing on the matter, but would be permitted to receive his assignments at home in the interim.[4]

For some time thereafter, no action was taken by either side. Then, on March 22,

1992, plaintiff filed this lawsuit asserting numerous claims against defendants, including denial of his procedural due process rights both when he was suspended and when the recommendation of expulsion was implemented. Shortly after the initiation of this suit, the school board notified plaintiff, by letter dated April 1, 1992, that a formal hearing would be held on April 7, 1992, regarding Monsour's recommendation of expulsion. Plaintiff was advised of the witnesses who might testify against him and informed of the reasons for the recommendation of expulsions, which included an extensive list of prior disciplinary measures taken against him, culminating in his two most recent acts. On April 7, 1992, the hearing was held, at which time Vinson, the superintendent of education, adopted Monsour's recommendation of expulsion.

## II. Analysis
### SUBSTANTIVE DUE PROCESS

■ Plaintiff claims that defendants' "actions, policies and customs" regarding their refusal to allow him to return to school following the expiration of his eight-day suspension were unsupported by substantive evidence, clearly erroneous in fact and law, and contrary to the overwhelming weight of the evidence, thus violating his right to substantive due process. The court does not agree. Although assuredly students have rights under the fifth and fourteenth amendments, education is not a fundamental right under the Constitution, and, as such, in determining whether a plaintiff's substantive due process right has been violated, the proper test is merely whether the government action is rationally related to a legitimate government interest. *San Antonio Indep. School Dist. v. Rodriguez,* 411 U.S. 1, 38–40, 93 S.Ct. 1278, 1299–1300, 36 L.Ed.2d 16 (1973). The Supreme Court has "repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials ... to prescribe and control conduct in the schools." *Tinker v. Des Moines Indep. Community*

---

**3.** Furthermore, Monsour noted that Hill was an eighteen-year-old sophomore/junior with only ten out of twenty credits needed for graduation, and that he was failing four out of the five courses in which he was enrolled.

**4.** And, even though plaintiff refused to complete these assignments, they were sent to him for a period of time.

*School Dist.*, 393 U.S. 503, 507, 89 S.Ct. 733, 737, 21 L.Ed.2d 731 (1969) (citations omitted). The Court has clearly established that the control of misconduct in the public school systems of the United States "necessarily" depends on the discretion and judgment of school officials. *Wood v. Strickland*, 420 U.S. 308, 328, 95 S.Ct. 992, 1004, 43 L.Ed.2d 214 (1975). Consistent with this interpretation, the Fifth Circuit has stated that all a school official need show is a "rational relationship between the punishment and the offense," and that rarely would that requirement not be satisfied. *Brewer v. Austin Indep. School Dist.*, 779 F.2d 260, 264 (5th Cir.1985) (citing *Mitchell v. Board of Trustees of Oxford Municipal Separate School Dist.*, 625 F.2d 660 (5th Cir.1980)).

Defendants contend, and the court agrees, that there are no genuine issues of fact necessitating a trial on plaintiff's claim of substantive due process violations.[5] Plaintiff has failed to respond to the defendants' motion for summary judgment on these grounds or to otherwise present any evidence supporting this claim. And, from an examination of the evidence submitted by defendants, it would appear that Monsour's decision not to allow Hill to return to school was both rationally related to the offenses allegedly committed by Hill, and justified under the established facts. Monsour has stated that her decision not to allow plaintiff to return to NWRAC pending a decision on the recommendation of expulsion was based on her belief that he posed "a continuing danger to persons or property, or an ongoing threat of disruption to the academic process,"[6] a position which is fully consistent with the policy of the Rankin County School District.[7] In fact, Monsour had previously warned Hill's mother that, if Hill's disciplinary problems continued, expulsion could ensue for this very reason.

All the evidence before the court shows that Hill was a continuing disciplinary problem for the officials of NWRAC. As already noted, he had been previously disciplined for, among other things, fighting, insubordination and threatening a school employee, resulting in a variety of alternative disciplinary measures. Monsour's memorandum to Vinson indicates that Hill had already been suspended from NWRAC for a total of twenty-five days before February 29, 1992. Plaintiff's prior conduct, coupled with his actions on February 24 when he struck Byrd without notice or cause, and the principal's conclusion, formed after reasonable investigation, that Hill had made threatening motions and cursed a secretary at NWRAC on February 28, would, in the court's opinion, lead a reasonable administrator to conclude that plaintiff posed a danger to other students and faculty of NWRAC, and presented a threat to the academic environment. The court thus concludes that Monsour's decision not to allow plaintiff to return to NWRAC was justified. Furthermore, considering the nature of Hill's prior acts, her decision clearly was "rationally related" to Hill's offenses.

## PROCEDURAL DUE PROCESS

Plaintiff next claims that he was denied procedural due process when given his two suspensions, totaling eight days, and when denied readmittance to NWRAC following the expiration of those two suspensions. The Fourteenth Amendment forbids states from depriving an individual of life, liberty or property without due process. Education, while not a fundamental right, is both a protected property and liberty interest and, accordingly, is entitled to protection under the due process clause. *See Goss v.*

---

**5.** A party moving for summary judgment can discharge his burden by demonstrating the absence of an essential element supporting the opponent's case. *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

**6.** Monsour's memorandum to Vinson, recommending expulsion, and her testimony at Hill's expulsion hearing indicate that this was the basis for not allowing him to return to school.

**7.** Monsour's reason for prohibiting Hill from returning to school was not novel or arbitrarily created, but was in accord with established school policy, which provided that:

> If a student's presence poses a continuing danger to persons or property or an ongoing threat of disruption to the academic process, the student may be immediately removed from school.

*Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (state-established right to education creates property interest; disciplinary actions also infringe on liberty); *see also* Miss.Code Ann. § 37–1–2 (Mississippi children extended right to free public education). That being established, the court must determine what process was due in the aforementioned situations.

### 1. Short–Term Suspensions

The procedures which will satisfy due process when a student is suspended for ten days or less were specifically addressed in *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). The Court initially noted that the very nature of due process negates the idea that a single inflexible procedure can be applied in every situation. However, the Court stated that, "at a minimum ... students facing suspension ... must be given *some* kind of notice and afforded *some* kind of hearing." *Id.* at 578, 95 S.Ct. at 738. Yet the Court, due to its concern that requiring extensive formal procedures for short-term suspension would be too costly and could potentially interfere with the educational environment, provided that in order to satisfy due process, a disciplinarian need only do the following:

> There need be no delay between the time 'notice' is given and the time of the hearing. In a great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred. We hold only that, in being given an opportunity to explain his version of the facts at this discussion, the student first be told what he is

accused of doing and what the basis for that accusation is.

*Id.* at 582, 95 S.Ct. at 740; *see also Keough v. Tate Co. Bd. of Educ.,* 748 F.2d 1077, 1080 (5th Cir.1984).

Plaintiff's three and five-day suspensions, whether considered separately or in the aggregate, total less than ten days and, thus, fall within the parameters of *Goss.* After examining the evidence submitted, the court is of the opinion that NWRAC officials, prior to both suspensions, satisfied the requirements of due process.[8] Plaintiff has admitted that Monsour, before his initial suspension, questioned him concerning allegations that he struck Byrd and that during this informal meeting, he admitted striking Byrd. As to the notice and hearing provided Hill prior to the five-day suspension, plaintiff concedes that he was taken to the principal's office where both he and the secretary were questioned concerning the incident. Clearly, the requirements of *Goss* were satisfied in both instances.

### 2. Refusal to Readmit Hill Pending Hearing on Expulsion

Plaintiff contends that defendants' refusal to readmit him to NWRAC following the expiration of his eight-day suspension denied him due process. As the court interprets Hill's memorandum submitted in support of his motion for summary judgment, he apparently contends that defendants' failure to conduct any type of formal hearing regarding his expulsion until April 7, 1992, approximately two months after being informed on February 10, 1992 that he could not return to school, deprived him of procedural due process.[9]

8. The court would note that plaintiff failed to challenge defendants' request for summary judgment on this issue, or present any evidence indicating that procedural due process was not satisfied.

9. Plaintiff has not alleged this specific procedural due process claim in his complaint. He has alleged, along these lines, that defendants denied him due process by their "conduct, actions and policies" of not allowing him to return to school during the pendency of youth charges filed by Monsour and Carr following the incident which occurred February 28. However, plaintiff has submitted no evidence showing that defendants'

decision to refuse him reentry was in any way precipitated by the youth court charges. In fact, the only evidence submitted is the testimony of Monsour, which indicates that there was no such policy and that her decision was not based on the filing of youth court charges. As such, a procedural due process claim based on this ground would fail. In any event, though, in his request for summary judgment, plaintiff appears to have abandoned this claim and to have adopted a more generalized claim of delay or failure to provide him the appropriate procedural due process. Defendants have not alleged that plaintiff's claim was improperly pled and, in fact, have responded to it. Accordingly, in the absence of

Hill correctly points out that he was entitled to a formal hearing prior to defendants' decision to indefinitely suspend him pending a hearing on Monsour's recommendation of expulsion.[10] The Court in *Goss* stated that suspensions exceeding ten days or expulsion might require "more formal hearings," but left the determination of the proper standards to the lower courts. *Goss*, 419 U.S. at 585, 95 S.Ct. at 741. The standards adopted in the Fifth Circuit require school officials, prior to a long-term suspension or expulsion, to give a student notice and a hearing. That hearing is to include the "rudimentary adversary elements," which should include "specific notice of the charges, the names of the witnesses with a summary of their testimony, and [the student] should be given the opportunity to refute the charges...." *Williams v. Dade Co. School Bd.*, 441 F.2d 299 (5th Cir.1971) (citing *Dixon v. Ala. State Bd of Educ.*, 294 F.2d 150 (5th Cir.1961)); *see also McClain v. Lafayette Co. Bd. of Educ.*, 673 F.2d 106 (5th Cir.1982) (recognizing continued validity of *Dixon*). There is little question that a suspension lasting approximately thirty school days qualifies as a long-term suspension, and that defendants should have allowed Hill a formal adversary hearing prior to that suspension.[11] However, the only hearing prior to his suspension was an informal conference between plaintiff and his mother and Monsour. And, although the standards of procedural due process are not completely inflexible, the court cannot conclude that the conference between the Hills and Monsour satisfied the requisite formal procedural requirements. Contrary to plaintiff's apparent position, though, this does not necessarily ensure that his procedural due process claim will succeed.

In order "to establish a denial of procedural due process, a party must show substantial prejudice." *Davis v. Mann*, 882 F.2d 967, 974 (5th Cir.1989); *Keough*, 748 F.2d at 1083; *United States Pipe & Foundry v. Webb*, 595 F.2d. 264, 274 (5th Cir.1979). Defendants have argued that if some attributable harm is not shown by Hill, his procedural due process claim must fail. Plaintiff has failed even to respond to defendants' argument, and has presented no evidence indicating that the defendants' failure to provide him a timely formal hearing prejudiced him in any way. The court, after examining the evidence submitted by defendants, cannot conclude that Hill was prejudiced or otherwise injured as a result of defendants' failure to provide him with a prompt formal hearing.

In *Keough*, the plaintiff was suspended for, *inter alia*, repeated misbehavior, use of profane language and leaving campus without permission, and claimed that the proceedings held prior to his long-term suspension were insufficient and thus violative of due process. The court examined the plaintiff's prior admissions of misconduct, and concluded that there was substantial evidence that the plaintiff had admitted the charges on which his suspension was based. Accordingly, the court concluded that his suspension did not result from a procedural due process deprivation. *Keough*, 748 F.2d at 1083. Similarly, in this case, plaintiff has admitted that numerous times prior to his indefinite suspension, disciplinary actions had been taken against him by officials of NWRAC, and has also admitted that he struck Byrd without warning. In the court's opinion, this demon-

---

any objection by the defense, the court will consider this as an implied amendment to plaintiff's complaint.

**10.** Plaintiff characterizes Monsour's decision not to allow him to return to school after the conclusion of his suspensions on February 10 as the beginning of his expulsion. In the court's opinion, Monsour's decision not to allow plaintiff to return is more aptly classified as an indefinite suspension pending final determination as to expulsion. However, the court would note that this characterization does not affect the outcome of this matter.

**11.** Normally, a procedural due process hearing is to precede a student's expulsion from school. However, when a student poses a continuing danger to persons or property, etc., notice and hearing may be delayed, but still must follow as soon as practicable. *Goss*, 419 U.S. at 581, 95 S.Ct. at 740. Thus, even were a formal hearing deemed impractical when Hill was suspended, one should have been held at least when it became clear that the suspension was to be lengthy. And, in the court's opinion, notice and hearing in this case could have practicably been provided sooner than April 7.

strates that his indefinite suspension was not the result of a procedural due process violation but rather of his own misconduct. Additionally, even had a formal hearing been held prior to February 10, plaintiff has failed to persuade the court that the resulting punishment which would have been imposed by the Rankin County School Board would have been different in any way from that which was actually implemented by Monsour. The evidence reveals that on April 7, when a formal hearing on this matter was actually held, Monsour's recommendation of expulsion was adopted by the superintendent of education. Had this hearing been held prior to February 10, plaintiff would doubtless have been expelled at that time instead of being placed on indefinite suspension. Either way, the result would be the same—plaintiff would not have been allowed to attend NWRAC after February 10. Therefore, the court concludes that plaintiff's claim should be dismissed.

### III. Conclusion

Based on the foregoing, it is ordered that plaintiff's motion for partial summary judgment is denied, and it is further ordered that defendants' motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED.